**TRENK, DiPASQUALE,**
**DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
(973) 243-8600
Anthony Sodono, III
Sam Della Fera, Jr.
Joao F. Magalhaes
*Proposed Counsel to North Jersey Community*
*Coordinated Child Care Agency, Inc.,*
*Chapter 11 Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| NORTH JERSEY COMMUNITY COORDINATED CHILD CARE AGENCY, INC., | Case No. 14-20256 |
| Debtor. | |

**APPLICATION IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), FED. R. BANKR. P. 4001(b), AND D. N.J. L.B.R. 4001-4 FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

TO:  THE HONORABLE JUDGES OF THE
     UNITED STATES BANKRUPTCY COURT

North Jersey Community Coordinated Child Care Agency, Inc. (the "Debtor"), by and through its proposed counsel, Trenk, DiPasquale, Della Fera & Sodono, P.C., hereby moves (the "Motion") this Court for interim and final orders authorizing the Debtor to use cash collateral pursuant to Title 11 of the United States Code (the "Bankruptcy Code") sections 105, 363(c)(2)(B), 363(e), and 507(b), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-4 of the District of New Jersey's Local Bankruptcy Rules (the "Local Bankruptcy Rules"). In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. The Debtor filed its voluntary Chapter 11 petition on May 20, 2014 (the "Petition Date").

5. A history and description of the Debtor and its operations, together with the reasons for its Chapter 11 filing, are set forth in the Certification of Arnold Grant, the Debtor's Finance Director, in support of the Debtor's "first day" motions (the "Finance Director Certif."), which is incorporated herein as if set forth in its entirety.

**Potential Secured Creditor Issues**

6. The Debtor's principal place of business is 101 Oliver Street, Paterson, New Jersey 07501 ("101 Oliver Street"). The Debtor owns 101 Oliver Street, which represents the Debtor's primary asset.

7. An October 16, 2012 appraisal prepared for TD Bank, N.A. ("TD Bank") by The Oxford Group (the "Appraisal") concluded that 101 Oliver Street was worth $3.2 million. A true and accurate copy of the Appraisal is annexed as **Exhibit A** to the Finance Director Certif.

8. 101 Oliver Street is potentially subject to the alleged secured claims of TD Bank and City National Bank of New Jersey ("CNB").

**TD Bank**

9. TD Bank's alleged secured claim originates from a $3.2 million loan conveyed to the Debtor by the New Jersey Economic Development Authority (the "NJEDA") on or about July 22, 1999, and in connection with which the NJEDA issued and delivered a $3.2 million bond in favor of Hudson United Bank. On or about August 5, 2009, the NJEDA assigned its rights under its loan with the Debtor to Hudson United Bank.

10. Upon information and belief, TD Bank is the successor by merger with Hudson United Bank.

11. As of March 19, 2014, TD Bank alleged that it was owed a total of $626,967.86.

**CNB**

12. In or about August 2013, CNB conveyed to the Debtor a $150,000 line of credit.

13. Upon information and belief, in connection with this line of credit CNB asserts a second mortgage lien position on land, buildings, assignments of leases, rents, fixtures and improvements located at 101 Oliver Street.

14. Upon information and belief, as of the Debtor's bankruptcy filing, the full amount of the line of credit, $150,000, was owed by the Debtor to CNB.

**RELIEF REQUESTED AND REASONS THEREFOR**

15. By this Motion, the Debtor seeks the preliminary and final use of cash collateral to preserve its assets so as to maintain and maximize its value for the benefit of all parties-in-interest, and of course to also continue serving a high-need community. Although the Debtor does not at this time concede that its revenues constitute the cash collateral of either TD Bank or CNB, this Motion is pursued out of abundance of caution.

16. Pursuant to Bankruptcy Code section 363(a), cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents . . . and the proceeds thereof." 11 U.S.C. § 363(a).

17. By operation of Bankruptcy Code section 363(c)(2) and Bankruptcy Rule 4001(b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until the Court authorizes the use of cash collateral after notice and a hearing and upon a finding that the interest of the secured party is adequately protected. Also, section 363(c)(2) permits this Court to allow a debtor to use cash collateral so long as the debtor provides its secured creditors with adequate protection.

18. Although "adequate protection" is not defined in the Bankruptcy Code, courts generally describe it as "a balancing of the debtor's and a creditor's respective harm," see In re Carson, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted), and the legislative history of Bankruptcy Code section 361 reflects congressional intent to give courts flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. In re 5-Leaf Cover Corp., 6 B.R. 463, 466 (Bankr. S.D. W. Va. 1980).

19. In addition, Bankruptcy Code section 361 sets forth three (3) non-exclusive[1] methods of how an interest in property may be adequately protected, stating as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title

---

[1] Courts have held that the adequate protection mechanisms enumerated by Bankruptcy Code section 361 are not exhaustive. See In re Miller, 734 F.2d 1396 (9th Cir. 1984); In re Family Place Partnership, 95 B.R. 166 (Bankr. E.D. Cal. 1989).

4

>   results in a decrease in the value of such entity's interest in such property;
>
>   (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
>   (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

20. The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. In re Shriver, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); In re South Village, Inc., 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. In re Ramco Well Service, Inc., 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983). Therefore, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. Id.; accord, In re Price, 40 B.R. 578, 580 (Bankr. N.C. Tex. 1984).

21. Furthermore, courts have held that the existence of an equity cushion can also provide adequate protection. In re Gallegos Research Group, Corp., 193 B.R. 577, 584 (Bankr. D. Col. 1995) (oversecured creditors may not be entitled to cash payments or post-petition liens because they are adequately protected through the existence of a value cushion). Personal

guaranties are to be taken into account when calculating the value of a secured creditor's equity cushion.  See, e.g., In re Diaconx Corp., 69 B.R. 333, 340 (Bankr. E.D. Pa. 1987).

22. In the present matter, assuming arguendo that TD Bank and CNB are secured creditors with validly perfected liens on 101 Oliver Street, a significant equity cushion exists above and beyond their claims.  Using the Appraisal, and applying TD Bank's and CNB cumulative claims of approximately $776,967.86, there would remain equity of over $2.42 million.

23. Accordingly, there is a massive equity cushion according to the appraisal commissioned by TD Bank, and thus no potential that the value of either TD Bank's or CNB's alleged liens will decrease as a result of the automatic stay.

24. Furthermore, if the alleged secured creditors prevail on asserting rights to collateral beyond a mere lien on real property, then they will also be secured by a variety of other property interests – equipment, inventory, and other personalty.

25. Again assuming arguendo that TD Bank and CNB are secured creditors with validly perfected liens on 101 Oliver Street, and further assuming arguendo that TD Bank and CNB raise arguments that the Debtor should not be permitted to use its "cash collateral," the Debtor will only use such alleged cash collateral in the ordinary course of its business and in accordance with the budget annexed as **Exhibit B** (the "Budget") to the Finance Director Certif., which projects revenues and expenses from May 2014 through December 2014.

26. The Budget reflects only those expenditures needed to not only maintain the Debtor's operations, but also to preserve 101 Oliver Street while also providing critical resources that address a dire Paterson community need: early childhood care and education.

27. A denial of the use of alleged cash collateral to fund the Debtor's day-to-day operations will severely harm the Debtor at a critical time, effectively hindering its ability to reorganize. Essentially, without the authority to use alleged cash collateral, the Debtor cannot continue to operate; that will cause a loss of going concern value, and preclude the ability to reorganize, thereby preventing creditors from realizing upon reorganization value.

28. The Debtor has the ability to reorganize within a reasonable period of time and to make distributions for the benefit of all creditors.

29. The Debtor is prepared to discuss with all of its creditors, including of course TD Bank and CNB, the development of both a financial and operational restructuring plan. The authority to use alleged cash collateral will enable the Debtor to engage in those discussions and accomplish its reorganization, while operating in the ordinary course.

## TIMING AND NOTICES

30. The Debtor respectfully seeks a two-part hearing process.

31. First, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor seeks a preliminary hearing on the use of Cash Collateral in accordance with the Budget on less than fifteen (15) days' notice.

32. Second, the Debtor seeks a final hearing on at least fifteen (15) days' notice. At a minimum, the Debtor proposes to give notice pursuant to Bankruptcy Rule 4001(b)(1) and (3) to the Office of the Office of the United States Trustee, TD Bank, CNB, the Debtor's twenty (20) largest unsecured creditors, any other parties claiming an interest in the Cash Collateral, and any party who has requested notice.

## NO PRIOR REQUEST

33. No prior application for the same or similar relief has been made to this or any other Court.

## REQUEST FOR WAIVER OF BRIEF

34. As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement of Local Bankruptcy Rule 9013-2, concerning the filing of a brief, be waived.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter an interim order, substantially in the form submitted herewith, authorizing the use of alleged cash collateral on an interim basis; (ii) enter a final order, substantially in the form submitted herewith, authorizing the use of alleged cash collateral on a final basis; and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**TRENK, DIPASQUALE,
DELLA FERA & SODONO, P.C.**
*Proposed Counsel to North Jersey Community Coordinated Child Care Agency, Inc., Chapter 11 Debtor and Debtor-in-Possession*

By:  /s/ *Anthony Sodono, III*
        Anthony Sodono, III

Dated: May 20, 2014

4836-2680-2971, v. 1